MARY COSTELLO v. KANSAS CITY and KANSAS CITY RAILWAYS COMPANY, Appellants.

Division Two, March 13, 1920.

1. **NOTICE OF SUIT: By Suit and Service of Petition and Summons.** Under the statute (Laws 1913, p. 545) declaring that no action for damages "shall be maintained" against a city having one hundred thousand inhabitants, on account of injuries growing out of a defective condition in a street, "until notice shall have been given in writing" to the mayor, within ninety days of the accident, preceding formal notice is not required, if suit is brought within three days by a petition sufficiently descriptive of the place where and the time when the injury was received and the character and circumstances of the injury, and a copy of the petition and summons is promptly served on the city. [Following Hunt v. City of St. Louis, 278 Mo. 213 and distinguishing Mathieson v. Railroad, 219 Mo. 542.]

2. ————: ————: **By Service of Summons Only.** Where in an action for damages brought against the street railway company and the city, within three days after the personal injuries were received, the summons and a copy of the petition were duly served on the company and the summons only was served on the city, there was a sufficient compliance with the statute declaring that no such action shall be maintained unless notice in writing shall have been given to the mayor within ninety days after the accident occurred. The summons notified the city that it must, within a given time, file answer to the petition of plaintiff, and that petition was a public record of which the city was bound to take notice, and the city was sufficiently notified of its contents; and if the petition sufficiently stated the place where and the time when the injuries were received and the character and circumstances of the injury, the notice was sufficient, and the statute was complied with.

3. ————: **Manner of Service: Actual Notice.** The statute (Laws 1913, p. 545) declaring that no action for damages against certain cities shall be maintained unless notice in writing is given to the mayor within ninety days after the personal injuries shall have been received prescribes no manner of service, and therefore it is sufficient to show that the city actually received the notice; and an answer by the city denying "each and every allegation in plaintiff's petition contained" conclusively shows that the city actually read and examined the petition, a copy of which was served only on the defendant railway company.

Costello v. Kansas City.

4. **NEGLIGENCE: Instruction: Comment on Evidence.** An instruction telling the jury that plaintiff admits that she looked down at the place where she stepped in alighting from the street car, "and if you believe from the evidence she saw, or in the exercise of ordinary care should have seen, the condition of the place where she was stepping, and that in such circumstances a reasonably prudent person could, in the exercise of reasonable care, have stepped down from such car without stepping on the edge of the pavement bordering the street car rails, then your verdict must be for the defendant city," was properly refused, because it singles out for comment certain of the evidence and gives it undue prominence, the facts being that plaintiff, as she stepped from the front end of a car on a curve, stepped on a ledge of rock which was five or six inches above a depression in the street, whereby her ankle turned and she fell to the street, striking the step of the car.

5. ———: ———: **Duty of Defendants: General Terms.** An instruction for plaintiff which does not direct a verdict, but in general terms expresses the care the defendant company is required to exercise towards passengers alighting from its cars and the care the defendant city must exercise in maintaining its street in a reasonably safe condition, is not erroneous, for that it does not exculpate the defendant city if plaintiff was injured after stepping several steps away from the car, if the duty of both defendants as applicable to the particular facts is correctly defined in other instructions.

6. ———: **Leading Question: Identifying Photograph.** The allowance of leading questions is largely within the discretion of the trial court, and it may be difficult for plaintiff to identify a photograph of the place where she stepped from the car except by a leading question.

7. ———: **Permanent Injuries: Subsequent Turning of Ankle.** Where plaintiff's petition alleged that, as she stepped from the street car, she stepped on a ledge of rock five or six inches above a depression in the street and her ankle turned, that her right ankle was fractured and dislocated, that the ligaments, muscles, tendons and nerves were severely bruised and lacerated and that as a result of the injuries she would "for all time be a cripple," testimony that she was lame, that her foot turned under her if she did not set it down just right, and that she had fallen five times since the injury on account of her ankle turning, was not erroneous. [Distinguishing Hall v. Coal Co., 260 Mo. 351.]

8. **WITNESS: Trustworthiness: Proven by Himself.** The trustworthiness of a witness may be proven by his own testimony. It is not error to permit a witness who had described the accident which

37—280 Mo.

resulted in plaintiff's injury and who has been severely cross-examined by defendant's counsel in an endeavor to impeach his good faith, to affirmatively answer, on redirect examination, the question: "You are entrusted with doing the express company's business in a responsible position?"

9. EVIDENCE: Comment by Court. A statement by the court, in limiting an injuiry, that "it doesn't controvert anything that has been proven," being fully corroborated by the record, is not error.

10. NEGLIGENCE: Instruction: Assumption of Fact: Depression: If Any. An instruction telling the jury that "if you believe and find from the evidence that" on the date plaintiff stepped from a street car and was injured "there was, at or near the usual stopping place (if any) for north-bound cars, a depression in the street about five inches deep, and that said depression (if any) was so situated that there was danger," etc., does not assume that a depression existed at the place, but required the jury to find as a fact that it did exist, and it was not therefore necessary to insert the word "if any" after the word "depression" wherever it was subsequently used in the instruction.

11. ————: ————: Cured by Another. A defendant is in no position to complain of an instruction given on behalf of another defendant if a like instruction was given on its own behalf.

12. ————: ————: Verdict Against Both Defendants. The defendant railway company cannot complain of an instruction given on behalf of defendant city which told the jury that they might return a verdict in favor of the city even though it might be against the company, where the verdict was against both defendants.

13. TRIAL: Judge Going to Jury Room. A complaint that the trial judge went to the jury room while the jury was deliberating, not mentioned anywhere except in affidavits attached to the motion for a new trial, cannot be considered on appeal.

14. VERDICT: Contrary to Physical Facts. A verdict should not be set aside as inconsistent with the physical facts, where it is obvious from the limited facts developed that the accident might have occurred in the manner detailed by plaintiff's testimony.

15. ————: Excessive: $2000. A verdict for $2000 for permanent injuries to plaintiff's ankle is not excessive.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner*, Judge.

AFFIRMED.

*E. M'. Harber, M. A. Fyke* and *A. F. Smith* for appellant, Kansas City.

(1) The court erred in refusing to give the instructions asked by the defendant city. (a) No proper notice having been served upon Kansas City, plaintiff was not entitled to more than nominal damage in any event. The service of a proper notice is a condition precedent to the right of a plaintiff to recover in a suit of this kind. Reid v. Kansas City, 195 Mo. App. 457; Jacobs v. St. Joseph, 127 Mo. App. 672. (b) The court erred in refusing to give instruction 14 asked by defendant city. Said instruction submitted the question of whether or not plaintiff was in the exercise of reasonable care. (2) The court erred in giving plaintiff's first instruction. This instruction assumed the facts in controversy in this action. Nolan v. Met. St. Ry. Co., 250 Mo. 621. (b) There was no evidence that the photograph was taken at the time of or immediately after the accident. Plaintiff's counsel promised to make such proof, but the promise was not fulfilled. Judgment in the case should therefore be reversed. Root v. K. C. So. Ry. Co., 195 Mo. 375, 376. (3) The court erred in permitting plaintiff to testify that as a result of her sprained ankle, she had fallen a number of times since the accident, such evidence being outside of the issues in the case. Hall v. Manufacturers Co., 260 Mo. 371. (4) The court erred in permitting counsel to hand witnesses a photograph and then to ask the witness if the photograph was a correct representation of the conditions as they existed at that time. This practice was improper: (a) It had the vice of leading and suggestive questions. (5) The court erred in permitting a witness for plaintiff to give his own conclusions as to his worthiness of belief. (6) There was no error in giving instructions 12 and 13 on behalf of the defendant city.

*Richard J. Higgins* and *Mont T. Prewitt* for appellant, Kansas City Railways Company.

(1) The court erred in giving instruction numbered 2 requested by plaintiff. Siegrist v. Arnot, 10 Mo. App. 206; Merriwether v. Cable Co., 45 Mo. App. 528; Boyd v. Railway, 249 Mo. 130; Bond v. Railway, 122 Mo. App. 214; Brock v. Transit Co., 107 Mo. App. 109; O'Neil v. Blase, 94 Mo. App. 648; Dowling v. Allen, 88 Mo. 293; Bank v. Crandell, 87 Mo. 208; Clark v. Railway, 166 Mo. App. 156; Wilder v. Railway, 164 Mo. App. 121; Arata v. Railway, 167 Mo. App. 91; Detrick v. Railway, 143 Mo. App. 179; Beave v. Transit Co., 212 Mo. 351. (2) The court erred in giving instructions numbered 12 and 13 as requested by defendant city. Fleming v. Railway, 101 Mo. App. 217; Smith v. Sedalia, 152 Mo. 283; Patee v. Wagon Co., 97 Mo. App. 356; Grigsby v. Fullerton, 57 Mo. 309; Bank v. Towson, 64 Mo. App. 97; McAtee v. Vanlandingham, 75 Mo. App. 45; Warder v. Seitz, 157 Mo. 140; Marr v. Bunker, 92 Mo. App. 651; Hamilton v. Crowe, 175 Mo. 634; Mining Co. v. Frankenstein, 179 Mo. 564. (3) The court erred in going to the jury room while the jury was deliberating in this cause, and coercing and forcing the verdict. Lamport v. Aetna Life Ins. Co., 199 S. W. 1022; McPeak v. Railway, 128 Mo. 644; State v. Hill, 91 Mo. 428; McCombs v. Foster, 64 Mo. App. 618; State v. Alexander, 66 Mo. 163; Chinn v. Davis, 21 Mo. App. 365; State v. Campbell, 166 Mo. App. 591. (4) The court erred in refusing to sustain demurrer asked at the close of plaintiff's case, and renewed at the close of all evidence, under the physical-facts doctrine. Scroggins v. St. Ry. Co., 138 Mo. App. 219; Daniels v. Railways, 177 Mo. App. 281; State v. Turlington, 102 Mo. 663; State v. Bryant, 102 Mo. 32; State v. Anderson, 89 Mo. 332. (5) The court erred in refusing to sustain defendant's motion for new trial and in arrest because of each of the above errors, and for the further reason that the verdict is

excessive, and against the weight of the testimony.
Young v. Bacon, 183 S. W. 1082; Franklin v. Fisher,
51 Mo. App. 347; Gabriel v. Railway, 164 Mo. App.
60.

*W. W. McCanles* and *Hogsett & Boyle* for respond-
ent.

(1) The court did not err in giving instruction
number 2, requested by plaintiff. (a) The instruction
did not assume the existence of the depression but
affirmatively required the jury to find its existence. (b)
The instruction affirmatively required the jury to find
that the injuries were directly caused by the negligence
submitted; and defendant's instruction number 6 ex-
pressly required the jury to find the same fact. Blies-
ner v. Distilling Co., 174 Mo. App. 139; Farmer v. Rail-
way, 178 Mo. App. 594; Pendegrass v. Railway, 179
Mo. App. 534; Crader v. Railroad, 181 Mo. App. 542;
Garard v. Coke Co., 207 Mo. 242. (c) The motion for
a new trial is insufficient to present for review the
giving of any instructions. Surbeck v. Surbeck, 208
S. W. 655; Kansas City Trunk Co. v. Bush, 208 S. W.
626; Disinfecting & Manufacturing Co. v. Bates Coun-
ty, 273 Mo. 304; Lampe v. United States Ry. Co., 202
S. W. 438; Nitchman v. United Rys. Co., 203 S. W.
491; Probst v. St. Louis Box Co., 207 S. W. 891; Stretch
v. City of Lancaster, 206 S. W. 390. (2) The court
did not err in giving the instructions number 12 and 13
requested by the defendant city. (a) Defendant Rail-
ways Company cannot assign error in instructions giv-
en for its co-defendant, the city. O'Rourke v. Lindell
Railway Co., 142 Mo. 352; Souther Iron Co. v. Realty
Co., 175 Mo. App. 246; Doster v. Railroad Co., 158 S.
W. 440. (b) Instruction 12 contains no error against
the Railway Company. (c) Instruction 13 contains no
error against the Railway Company. Since the defend-
ants were bound by different rules of duty, the jury
might possibly have found for the city and against the
Railway Company. But since the jury found both de-

fendants liable, it follows that instruction 13 could not possibly have had any effect upon the verdict at all. (3) The court did not coerce the verdict. (a) Defendants could not preserve the point for review by affidavit filed with the motion for a new trial, but only by the bill of exceptions; and there is no such point preserved in the bill of exceptions. Lemmons v. Robertson, 164 Mo. App. 85.; Sperry v. Hurd, 151 Mo. App. 583.; Harless v. Ry. Co., 123 Mo. App. 22; Miller v. Engle, 185 Mo. App. 560. (b) Even if the facts stated in the affidavit were preserved by the bill of exceptions, it is evident that the trial court did not coerce the verdict. McPherson v. Railway Co., 97 Mo. 260; Fairgrieve v. City of Moberly, 29 Mo. App. 141. (4) The trial court properly overruled the demurrer to the evidence. The plaintiff's version of the injury is not opposed to the physical facts, but is in accord therewith. Middleton v. Power Co., 196 Mo. App. 258; Allen v. Street Railways, 188 Mo. App. 200; Benjamin v. Street Ry. Co., 245 Mo. 598; Gillogly v. Dunham, 187 Mo. App. 557; Warnke v. Rope Co., 186 Mo. App. 42. (5) The verdict is not excessive. Lorton v. Wabash, 141 S. W. 478; Biggie v. Railroad, 140 S. W. 602; Dent v. Traction Co., 145 Mo. App. 61; Harris v. Street Ry. Co., 168 Mo. App. 336; Brown v. City of Carthage, 189 Mo. App. 333. (6) The court did not err in refusing to give instructions 16 and 14. (a) Instruction 16 was properly refused because the suit was brought, and the summons served upon the city, and answer filed by the city, all within ninety days from the date of the injury, and the necessity of serving the formal notice required by statute was dispensed with. Morrill v. Kansas City, 179 S. W. 759. (b) Instruction 14 asked by the city was properly refused because it was a comment upon the evidence of the plaintiff. Meyers v. Railroad Co., 171 Mo. App. 283; Richardson v. Street Ry. Co., 166 Mo. App. 162; Dungan v. Railroad Co., 178 Mo. App. 164. (7) The court did not err in permitting counsel to ask witness if the photographs in evidence were correct representations of the conditions as they existed

at the time of the injury. The matter of asking leading questions is within the discretion of the trial court and is never a cause for reversing a judgment. State v. Shoemaker, 183 S. W. 322; State v. Steel, 226 Mo. 583; State v. George, 214 Mo. 262. (8) The court did not err in permitting plaintiff to testify that the condition of her ankle had caused her to fall a number of times since the injury. The petition alleged that she would for all time be a cripple, and the evidence complained of was within that allegation. Rearden v. Railroad, 215 Mo. 134; Foster v. Rys. Co., 183 Mo. App. 602; Lyons v. Street Rys. Co., 253 Mo. 143; Cossitt v. Railways Co., 224 Mo. 97; Reynolds v. Ry. Co., 180 Mo. App. 138. Defendant did not object until after the questions were answered, and the objection therefore came too late. Osborne v. Railway Co., 144 Mo. App. 119; Utz v. Insurance Co., 139 Mo. App. 552; Stiller v. Railway Co., 141 S. W. 483; Lowenstein v. Railway Co., 134 Mo. App. 24. (9) The court did not err in permitting the witness to testify to the nature of his occupation. His occupation was competent evidence as to his character and credibility, and the testimony was admissible on that ground.

WHITE, C.—The plaintiff recovered judgment against both defendants in the Circuit Court of Jackson County, in the sum of two thousand dollars for personal injuries. The case was appealed to the Kansas City Court of Appeals, where the judgment was affirmed, and afterwards, on motion for rehearing, certified to this court, because the opinion was considered by that court to be in conflict with the opinion of this court in the case of Mathieson v. Railroad, 219 Mo. 542.

On the twenty-first day of April, 1917, plaintiff was a passenger on a car operated by the defendant Kansas City Railways Company, on what was termed the Jackson Line. The car was a "one-man car," where the motorman was also conductor; passengers were received and discharged at the front end of the car. According to the plaintiff's evidence, as the car ap-

proached Twelfth and Jackson Streets, where the plaintiff desired to transfer to another line, the car was stopped in response to her signal; she went to the front end and stepped down from the car, and in doing so stepped on a ledge of rock which was about five or six inches above a depression in the street, her ankle turned and she fell to the street, striking the step of the car. The result was torn ligaments and other injuries to the ankle, and internal injuries. She testified that in alighting from the car she looked down, but on account of the darkness was unable to see the defect in the street which caused her injury. Her version of the facts was corroborated by other witnesses.

It was claimed by the defense, and the claim supported by some testimony, that the plaintiff alighted safely from the car and walked several steps before she fell and received the injury complained of.

I. The first error assigned by the defendant city, the ruling on which by the Kansas City Court of Appeals brought the case here, was the refusal of the trial court to instruct the jury, that, as against a city, the verdict should be for nominal damages and only in case of a finding for plaintiff; this on the ground that prior to bringing the suit notice had not been given to the city under the Act of 1913. The act, found in Laws 1913, page 545, provides as follows:

Notice of Suit.

"*Section 1. Action for damages maintained, how—*No action shall be maintained against any city of this State which now has or may hereafter attain a population of one hundred thousand inhabitants, on account of any injuries growing out of any defect in the condition of any bridge, boulevard, street, sidewalk or thoroughfare in said city, until notice shall first have been given in writing to the mayor of said city, within ninety days of the occurrence for which such damage is claimed, stating the place where, the time when such injury was received, and the character and circumstances of the injury, and that the person so injured will claim damages therefor from such city.''

In this case no notice was given prior to bringing the suit, as is required by that statute. The injury occurred April 21, 1917, and the suit was filed three days later. The summons and a copy of the petition were served upon the Street Railways Company and the summons only was served upon the city.

The decision of this court which the Kansas City Court of Appeals believed to be in conflict with its opinion, Mathieson v. Railroad, 219 Mo. 542, l. c. 549, construes a statute of Kansas which allows an action for damages against a railroad company under certain circumstances, *"provided that notice in writing of the injury,"* etc., *"shall have been given."* It was held that the use of such language made it necessary to plead and prove the giving of the notice in order to state a cause of action and hence the notice must be given before the suit is brought.

This court, however, in case of Hunt v. City of St. Louis, 278 Mo. 213, 211 S. W. 673, in an opinion by FARIS, J., held the notice, required by the Act of 1913, was not a prerequisite to the filing of the suit because the language of the act is "no action shall be *maintained*" until such notice is given. It was also held that formal notice was not necessary where suit was filed and a copy of the petition and summons served upon the defendant within ninety days, because the petition sufficiently informed the city of the exact nature of the claim, both as to the injury and as to the alleged negligence causing it. Judge FARIS quotes approvingly the case of Morrill v. Kansas City, 179 S. W. 759, where the Kansas City Court of Appeals reviewed the authorities at length as to the reason for such notice. In that case no notice was given, but the suit was brought and the summons and a copy of the petition served upon the defendant within ninety days, and it was held that no other notice was necessary.

The case of Jacobs v. City of St. Joseph, 127 Mo. App. 669, is also cited with approval in the Hunt case, and it states the reason for such notice in these words, l. c. 671-2: "The object of the statute is to give the city

opportunity to investigate the case while conditions are fresh and thus protect itself against actions which may be brought long after the occurrence.''

A notice after suit was filed would serve that purpose as well as notice before.

Under the authority of the Hunt case, if the defendant had been served with a copy of the petition as well as the summons, no doubt. the notice would have been entirely sufficient. The question is whether the mere service of the summons, without a copy of the petition describing the defects complained of, would be sufficient notice.

It may be conceded that actual knowledge from some other source of the facts to be imparted by the notice is insufficient, just as a verbal notice would be insufficient. A written notice is required probably for the purpose of furnishing information. in definite terms as to the exact nature of the defect complained of. It must be borne in mind that the purpose of the notice is to *inform* the city of the nature of the claim in order that the city may be placed on guard and may investigate. Obviously, it would make no difference whether the information came from plaintiff by means of one instrument or two. The summons upon the city which appears in the record, notified the city it must, within a given time, file answer to ''the petition of Mary Costello.'' That petition was a public record which the city was bound to examine.

It is the rule, where a recorded instrument imparting constructive service refers to some other instrument not of record, that the party to be affected is notified of the contents of the other instrument referred to.   [National Bank of Commerce of Kansas City v. Morris, 114 Mo. 255; Beavers v. Bank, 177 Mo. App. 100, l. c. 104.]   There would seem to be no reason for refusing to apply that rule to actual written notice which is personally served and refers to another paper distinctly and definitely, which other paper is accessible to the party notified.

The section of the statute requiring this notice, Laws 1913, page 545, prescribes no manner of service.

It only says that notice shall be in writing. In such case it is always sufficient to show that the party to be served *actually received the notice.* [Miller v. Hoffman, 26 Mo. App. 199, l. c. 202; Ryan v. Kelly, 9 Mo. App. 396; Brost v. Whitall-Tatum Co., 89 N. J. L. 531.] For instance, the written notice required to be served, with no method of service prescribed, may be served by mail; if it is shown that the party to be served reiceved the letter containing the notice. [20 R. C. L. 345.] In this case it conclusively appears that the defendant city actually read and examined the petition, filed by the plaintiff in the circuit court, which contained a specific description of the defect complained of, because the defendant city filed its answer denying "each and every allegation" in the petition, and pleaded contributory negligence "in selecting the course plaintiff was pursuing." The notice, therefore, was sufficient.

II. The defendant city assigns error to the refusal by the court to give its Instruction No. 14, as follows:

"The jury are instructed that the plaintiff admits in this case that she looked down at the place where she stepped in alighting from the car at the time and place where she claims to have been injured. If you believe from the evidence that she saw, or in the exercise of ordinary care should have seen, the condition of the place where she was stepping and that in such circumstances a reasonably prudent person could, in the exercise of reasonable care, have stepped down from such car without stepping on the edge of the pavement bordering the street car rails (if you believe there was such an edge), then your verdict in this case must be for the defendant Kansas City."

**Comment on Evidence.**

The instruction properly was refused because it singles out for comment certain of the evidence and gives it undue prominence in stating to the jury what plaintiff said she did in alighting. [Eckhard v. St. Louis Transit Co., 190 Mo. 593, l. c. 620; Boyce v. Railroad, 120 Mo. App. l. c. 175; Dungan v. Railroad, 178 Mo. App. l. c. 171; Meyers v. Railroad, 171 Mo. App. l. c. 288; Huff v. Railroad, 213 Mo. l. c. 515.]

III. The city also complains of error in giving the first instruction on behalf of the plaintiff, as follows:

"You are instructed by the court that it was the duty of the defendant Kansas City Railways Company, under the law to exercise the highest degree of care to stop the car in question at a reasonably safe place at 12th and Jackson for the plaintiff as its passenger to alight therefrom.

Duty of Defendants.

"You are further instructed by the court that it was the duty of the defendant Kansas City, under the law, to exercise ordinary care to maintain the street in question at the place in question, in a reasonably safe condition for travel by the public."

It is urged that the instruction ignores the evidence offered by the defendant to the effect or tending to show that the plaintiff was injured after stepping several steps away from the car, and in effect tells the jury the plaintiff was injured in alighting from the car at the place in question.

The instruction is not open to that objection. It does not direct a verdict, but simply expresses in general terms the duty of the parties defendant, while other instructions apply that definition of duty to the particular facts in the case. The jury was specifically instructed at the instance of defendant city that if the defendant was hurt in walking away from the car then the verdict should be for the defendant. While it was the duty of the city to exercise care to maintain the street in a reasonably safe condition at the place where the plaintiff alighted, it could not be inferred that the city would be liable unless plaintiff was injured at that place.

IV. The plaintiff, when on the stand, was asked this question by her counsel: "Q. I hand you these two photographs, and ask you if you identify them as photographs of the place where you alighted from this car, as showing the condition in which it was at that time?"

Leading Question.

It was objected that the question was leading and it was not shown when the photograph was taken. The allowance of leading questions is largely made within the discretion of the trial court, and in a case like this it might be deemed difficult to identify an object like a photograph except by a leading question. [State v. George, 214 Mo. 269; State v. Whalen, 148 Mo. l. c. 290; State v. Bateman, 198 Mo. l. c. 222.]

While the evidence was indefinite as to the time when the photographs were taken, sufficient appears to indicate that they were taken soon after the injury was received. The important thing about the question and the answer was that the photographs showed the condition of the street as it was at the time the injury occurred. It is not claimed that the pavement had been repaired or changed. Apparently it would not matter when the photographs were taken if they showed the condition which obtained at the time the plaintiff was hurt.

V. The plaintiff testified that she was lame and that her foot turned under her if she didn't set it down just right, and that she had fallen five times since the injury on account of her ankle turning. Defend-

*Ankle Turning.* ant city objected to the testimony on the ground that such injury to an ankle was not within the allegations of the petition. The petition alleged that plaintiff's right ankle was fractured and dislocated, and the ligaments, muscles and tendons and nerves were severely bruised and lacerated and that as a result of the injuries she would "for all time be a cripple." Physicians testifying on behalf of plaintiff described the condition of her ankle; the condition was likely to be permanent and impaired her ability to use the foot; the adhesion between the sheath and the tendon achilles limited the flexion and extension of the foot and caused pain—a result naturally incident to the injury described in the petition. A tendency to fall on account of the weakness of the ankle could be said naturally to flow from the injury mentioned. The

case of Hall v. Coal Co., 260 Mo. 351, cited by appellants, and other cases of like nature, are not in point, for the reason that the ailment sought to be proven in each of such cases was entirely foreign to any particular injury alleged in the petition.

VI. Complaint is made of a ruling of the court in permitting a witness for plaintiff to answer the question: "You are entrusted with doing the express company's business in a responsible position?" to which the witness answered in the affirmative.

It is not objected that the question was leading, but **Trustworthiness.** that the witness was permitted to bolster up his character by giving his own conclusion that he was a trustworthy person.

Generally the character of a witness is put in issue whenever it is attacked either by direct evidence or by evidence tending to show that he had made previous contradictory statements. But the rehabilitation of the witness is not limited to circumstances of that kind. When the character of a witness for truth is attacked in any way, it is competent for the party calling him to offer evidence showing his trustworthiness. [State v. Maggard, 250 Mo. l. c. 345-6, and l. c. 349; Berryman v. Cox, 73 Mo. App. l. c. 74; State v. Christopher, 134 Mo. App. 6, l. c. 8; Kelly v. American Central Ins. Co., 192 Mo. App. 20, l. c. 24.] And this may be done by the evidence of the witness himself as well as by another. His testimony as to his character is as competent as that of anyone else. [State v. Weissman, 238 Mo. l. c. 556.] The question objected to was asked on redirect examination of the witness, after he had been severely cross-examined by the city's attorney in an endeavor to impeach his good faith by showing that at the time he saw the incident, which he described in his testimony—the injury to the plaintiff—he was in the employ of the street railway company as assistant supervisor; that when he saw the incident he made no report of it to his company. The endeavor

was to show it was his duty to make such report. The question was not open to the objection presented.

VII. A physician testified for defendant describing a condition which he found on examination of the
Comment plaintiff called retroversion of the uterus.
of Court. This question was asked:

"Q. What are some of the common causes of that. condition, Doctor? A. One of the most common causes, sir, is the result of child birth.

"Q. And why is that possible? A. Well—

"The Court: I don't think it is necessary to go into that. It doesn't controvert anything that has been proven in the case. It is unnecessary to go into the whole history."

Appellant complains that the court didn't permit him to offer material evidence as to her condition and commented upon the effect of the evidence.

As to the first objection, the record shows counsel for the city did go on without interruption and the witness explained in detail the several causes that might have produced the condition mentioned, and the reasons for such result.

The comment of the court complained of, that this evidence didn't tend to controvert what had already been proven, is fully corroborated by the record. Other physicians testifying for plaintiff had already stated the same facts that were asked for in the question propounded. It is impossible to see how the defendant was injured by the ruling.

VIII. On behalf of the Kansas City Street Railways Company complaint is made of the giving of plaintiff's instruction number two, which is as follows:

"If you believe and find from the evidence that on April 21, 1917, there was, at or near the usual stopping place (if any) for north-bound Jackson-Hardesty cars at 12th and Jackson, a depression in the street about
Assumption five inches deep, and that said depression (if
of Fact. any) was so situated that there was danger of persons, who might alight from street

cars stopping at said place, stepping into the same and being injured thereby; and if you further find that defendants by the exercise of ordinary care should have known that said depression was at said place and that there was danger of persons being injured by stepping into same; and if you further find that the defendant Kansas City, by the exercise of ordinary care should .have known said facts and conditions (if you so find them), in time by the exercise of ordinary care to have removed the depression before the time of plaintiff's injury (if any), but that said defendant, Kansas City, negligently (if you so find) permitted said depression to be and remain in the condition aforesaid at said place; and if you further find that thereafter on April 21, 1917, the plaintiff was a passenger on a north-bound Jackson-Hardesty Street car of the defendant Kansas City Railways Company, and desired to transfer at 12th and Jackson, and that the defendant Kansas City Railways Company negligently (if you so find) stopped said car at the aforesaid depression for the plaintiff to alight, and that said place was not a reasonably safe place for plaintiff to alight; and that as plaintiff alighted from said car, she stepped into the aforesaid depression and received injuries; and if you further find that plaintiff herself was at all times in the exercise of ordinary care for her own safety, then you are instructed by the court that your verdict must be .in favor of the plaintiff and against both of the defendants.''

It is objected that the instruction assumes a depression existed in the place complained of where the instruction speaks of ''said depression'' without requiring a finding to that effect.

The first requirement in the instruction is that the jury must ''believe and find from the evidence that on April 21, 1917, there was at or near the usual stopping place, if any, for the north-bound Hardesty cars at 12th and Jackson streets, a depression in the street'' etc., and that ''said depression (if any) was so situated that there was danger.'' Then when speaking of the other findings necessary in order to return a

verdict for plaintiff, it is mentioned as "said depression"—that is, the depression which they had found to exist and had found to be dangerous. The jury could not have misunderstood. They are presumed to be men of ordinary intelligence. The repetition of the phrase "if any" would not have tended to enlighten them further as to the necessity of finding such facts. Instructions like in purport to the one criticized have been approved by this court and the courts of appeals. [Sutter v. Metropolitan St. Ry. Co., 208 S. W. l. c. 852; Kinlen v. Railroad, 216 Mo. l. c. 161; O'Connell v. St. Louis Cable & Western Ry. Co., 106 Mo. 482, l. c. 487; Ludwig v. Cooperage Co., 156 Mo. App. 117, l. c. 124, 129.]

IX. The appellant Street Railways Company complains of instructions 12 and 13 given on behalf of defendant city. Instruction 12 was to the effect that if the defendant alighted safely from said car and was hurt in walking away from it the verdict should be for the city. A like instruction was given on behalf of the defendant railway company, so that it is in no position to complain.

*Asked by Appellant.*

Instruction No. 13, given on behalf of the city, complained of, told the jury that they might return a verdict in favor of the city even though it might be against the railway company. Since the jury returned a verdict against both the defendants, whatever error there might be in this instruction is harmless.

*Verdict.*

X. Both appellants have complained that error was committed by the judge of the court in going to the jury room while the jury was deliberating. This incident is not mentioned anywhere except in affidavits attached to the motion for new trial.

*Conduct of Judge.*

The bill of exceptions shows no formal objection or exception made to the action of the court at the time the incident is said to have occurred. The affidavits at-

tached to the motion attempted an excuse for failing to make the record up in the proper way. As the incident is related in the affidavit there was no error committed by the court; if there was, it is not preserved for review.

XI. It is further claimed on the part of both defendants that a demurrer to the evidence should have been sustained because the physical facts showed the incident could not have happened in the manner testified to by plaintiff and her witnesses. The argument upon that point runs in this way: The cobblestones which caused the elevation and the depression did not extend to exceed eighteen inches from the rail of the street car track; the step upon which the plaintiff descended to the ground extended out 23½ inches; plaintiff must have stepped beyond the extension of the step, so that when she stepped down she was obliged to step entirely over and beyond the depression of which she complained.

*Physical Facts.*

The car at that point stopped on a curve. The rail curved three feet and five inches in seventeen and a half feet. This curve was to the right. The plaintiff was discharged from the car at the front end and to the right. How far back the wheels were from the front does not appear from the evidence, but it is obvious that the step which was in front of the wheel would be much nearer to the rail than it would be if the track were straight. How much nearer would depend upon the position of the wheels and the length of the car. A mathematician might take the parabola presented by the section of track at that point and with the dimensions of the car, position of the wheel, etc., figure out exactly how far the edge of the step would be from the rail when it stopped. No such mathematical demonstration is presented. Besides, there is no conclusive evidence that the depression was within eighteen inches of the rail. It is apparent that the physical facts do not so contradict the plaintiff's case as to put her out of court.

XII. It is further claimed that the verdict is excessive. From the description of the injury by plaintiff and her physicians we are unable to say that the verdict is excessive.

**Verdict.**

The judgment is affirmed.

*Mozley, C.,* concurs; *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.